UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SEAN LEE MYERS,

      **Plaintiff,**

 v.                                        Case No. 24-CV-597

RACHETTE WORLDS, DR. CHRISTOPHER BETTS,
JAMES BELL, NURSE VARGA, PAULA BRADLEY,
and NURSE BOWLIN,

      **Defendants.**

---

### ORDER

---

Plaintiff Sean Lee Myers, who is representing himself and not currently incarcerated, filed a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the defendants violated his constitutional rights. (ECF No. 1.) This order screens his complaint.

### SCREENING OF THE COMPLAINT

*Federal Screening Standard*

While Myers is not proceeding *in forma pauperis* because he paid the full filing fee, district courts are permitted to screen every complaint, regardless of a plaintiff's fee status. *See Hoskins v. Polestra*, 320 F.3d 761, 763 (7th Cir. 2003). In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6).

*See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*Myers's Allegations*

On May 15, 2021, Myers experienced burning in his eye and went to the medical facility at Oxford Federal Correctional Institution. (ECF No. 1 at 3.) He stated that he had been cutting peppers the night before and that he had cataract surgery approximately the month before. (*Id.*) The nurse "barely evaluated me and sent me back to my housing unit." (*Id.*)

The next day, May 16, 2021, Myers awoke with his "eyelids glued shut from pus" and with eye pain. (ECF No.1 at 3.) He again went to the medical facility, but the nurse stated that the eye doctor was not in and only came in once a month. (*Id.*) Myers was examined by defendant Dr. Christopher Betts, who is a general

2

practitioner. (*Id.*) Myers reported that his vision was getting blurry and he was worried that his symptoms were a complication from his recent cataract surgery. (*Id.* at 4.) After consulting with defendant Health Services Administrator Rachette Worlds, Dr. Betts told Myers that he would be treating him instead of an eye doctor. (*Id.*)

Between May 18, 2021, and May 20, 2021, Myers's eye pain increased, his eye leaked pus, and he was beginning to lose his vision. (ECF No.1 at 4.) He was instructed to use a warm compress on his eye and to scrub his eye out with baby shampoo, but he was not prescribed baby shampoo. (*Id.*) He went to the medical unit several times during that time span but was told that he needed to give his eye time to heal. (*Id.*)

On May 24, 2021, Dr. Betts again examined Myers, telling him his eye was improving. (ECF No. 1 at 4.) Myers stated he believed his eye was getting worse because there was more pus and the pain was intensifying. (*Id.*) Dr. Betts simply took Myers vitals and sent him back to his housing unit. (*Id.*)

By May 31, 2021, Myers had a fever, and despite emailing Dr. Betts and Worlds daily, he was not allowed to see an eye doctor. (ECF No. 1 at 5.) The next day, June 1, 2021, Myers had a fever of 100.3, and Dr. Betts "now sees the rupture in my eye." (*Id.*) Dr. Betts prescribed 14 days-worth of antibiotics to Myers.

Myers saw Dr. Betts again on June 3, 2021, complaining of pain and blindness in his eye. (ECF No. 1 at 5.) Myers also stated that he did not receive his antibiotics. (*Id.*) Dr. Betts told Myers that, because his fever was gone, he didn't

3

Case 2:24-cv-00597-WED   Filed 07/24/24   Page 3 of 7   Document 4

need antibiotics anymore and cancelled them. (*Id.*) Instead, he gave Myers eye-drops. (*Id.*)

Sometime prior to June 8, 2021, Myers's family members called the prison and complained about his lack of treatment. (ECF No. 1 at 5.) On June 8, 2021, Myers was taken to the outside eye doctor that had performed the cataract surgery. (*Id.*) The non-defendant doctor stated that Myers's eye was "ulcerated" and infected with a fungus. (*Id.*) He prescribed Myers an antibiotic, eye drops, baby shampoo, a medical pillow, and a medical eye guard to sleep in. (*Id.* at 5-6.) Dr. Betts and Worlds refused to approve the outside eye doctor's prescriptions. (*Id.* at 6.) Myers also requested a lower bunk because of his vision problems, which request Worlds denied.

On June 14, 2021, Myers was examined by the non-defendant eye doctor employed by Oxford, who "declared my eye a medical emergency." (ECF No. 1 at 6.) Myers was sent to the University of Wisconsin hospital to see a specialist, non-defendant Dr. Kirk. (*Id.*) Dr. Kirk determined that his eye infection was caused by shingles. (*Id.*) Other doctors at the University of Wisconsin hospital noted that the infection ate through Myers' cornea, leaving only a very thin membrane. (*Id.*) Myers was treated with "embryonic skin on my eye." (*Id.*) Myers states he was scheduled for surgery but "due to Dr. Betts refusing to give me items prescribed I had complications" that delayed the surgery. (*Id.* at 7.)

On September 24, 2021, Myers talked to defendant nurse James Bell about receiving the items he was prescribed by the UW specialists, but he did not provide

4

them. (ECF No. 1 at 7.) On September 27, 2021, Myers spoke with defendant Nurse Practitioner Paula Brady, asking for a shingles vaccine and for the items the UW doctors prescribed, but she informed him that Dr. Betts was refusing to provide those items to Myers. (*Id.*)

Myers finally had surgery on his cornea on November 30, 2021. (ECF No. 1 at 7.) When he returned to Oxford from surgery, he was placed in a cell in the segregation unit without proper bedding. (*Id.*) Because he didn't have proper bedding, his stitches ripped. (*Id.*) When he went back to UW for a follow-up appointment, they tried to repair the damage caused by the bedding but were unable to. (*Id.*) Upon returning to Oxford, the defendants placed him in COVID quarantine and routinely denied him the medical supplies he needed to take care of his eye post-surgery, including eye drops and an eye guard. (*Id.* at 7-8.)

On May 20, 2022, Myers went back to UW, where his sutures were finally removed and he was prescribed antibiotic drops with instructions to use them four times a day for 14 days. (ECF No. 1 at 8.) When Myers returned to Oxford, Dr. Betts said he would place the prescription for the drops, but Myers never received them. (*Id.* at 8-9.) Due to the lack of care, Myers's eye again became infected. (*Id.* at 9.) As a result, he experiences constant eye pain and is now legally blind. (*Id.* at 9-10.)

*Analysis*

Because Myers is suing medical officers employed at a federal institution, his claims fall under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Remedies under *Bivens* are limited, and the United

5

States Supreme Court has recognized claims for only three circumstances: (1) a Fourth Amendment claim involving an unlawful search and seizure, as recognized by *Bivens*; (2) a Fifth Amendment due process claim involving gender discrimination, as recognized by *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim for inadequate medical treatment as recognized by *Carlson v. Green*, 446 U.S. 14 (1980). To state a *Bivens* claim under the Eighth Amendment, Myers must allege the defendants knew of or were deliberately indifferent to "a serious medical condition, then [did not take] minimally competent steps to deal with that condition." *Estate of Miller v. Marberry*, 847. F.3d 425, 428 (7th Cir. 2017).

Myers sufficiently alleges that the defendants violated his Eighth Amendment rights. Dr. Betts, Worlds, and the named defendant nurses all knew of his eye condition and either failed to properly treat it, failed to follow the specialists' instructions, or failed to provide the medical supplies necessary to prevent further infection. As a result, Myers is now legally blind. He may proceed on a *Bivens* claim against all defendants.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Myers may proceed on a *Bivens* claim against defendants Rachette Worlds, Dr. Christopher Betts, James Bell, Nurse Varga, Paula Brady, and Nurse Bowlin. Myers must review Federal Rule of Civil Procedure 4 (a)-(c) to get summonses issued and effect service of his complaint upon these defendants.

6

Dated at Milwaukee, Wisconsin this 24th day of July, 2024.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge